

**Federal Defenders**
OF NEW YORK, INC.

One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David E. Patton
*Executive Director and
Attorney-in-Chief*

Deirdre D. von Dornum
*Attorney-in-Charge*

March 11, 2022

**VIA ECF & EMAIL**
Hon. Eric Komitee
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: <u>United States v. Orlando Lopez, 20-cr-52 (EK)</u>

Dear Judge Komitee:

    I write in connection with Mr. Lopez's upcoming sentencing on April 8, 2022. On July 26, 2021, pursuant to a plea agreement with the government, Mr. Lopez pleaded guilty to counts two, four, five, six, seven, eight, nine, ten, eleven and twelve of the indictment. Counts two, and four through eleven charge Mr. Lopez with sexual exploitation of a minor in violation of 18 U.S.C. §2251 (a), (e). Count twelve charges Mr. Lopez with possession of child pornography in violation of 18 U.S.C. §2252(a)(4)(B), (b)(2). Pursuant to the plea agreement, Mr. Lopez has stipulated to the government's estimated guidelines range of life imprisonment and agreed not to seek a sentence below 300 months.[1]

    I write to object[2] to the Probation Office's calculated mandatory minimum and maximum

---

[1] In the plea agreement, the government estimated a total offense level of 51 resulting in a guidelines range of imprisonment of life in Criminal History Category I. *See* Plea Agreement, Ct. Ex. 1 at 9. However, the Probation Office notes that pursuant to Application Note 2 of U.S.S.G. Chapter 5, Part A, an offense level of more than 43 is to be treated as an offense level 43. *See* PSR ¶ 131 *citing* Application Note 2 of U.S.S.G. Chapter 5, Part A. This has no practical effect on the corresponding recommended guidelines range of imprisonment, which remains life. Additionally, Probation also notes, a life sentence is not permitted under the statute. *See* PSR ¶ 165. Nonetheless, given the permissible statutory maximums and the potential for consecutive sentences, this is a distinction without a difference. Probation has calculated a statutory maximum sentence for counts two, and four through eleven of 50 years; as discussed more fully in the defendant's objections to the Presentence Report, the defendant asserts the correct statutory maximum is 30 years. Probation and the defendant agree that the statutory maximum sentence for count twelve is 10 years. Were the Court to agree with the defendant's position, Mr. Lopez's statutory maximum sentence would be 280 years.

[2] The Defendant makes the following factual objection to the presentence report: Paragraph 138 alleges that in 1997, Mr. Lopez was convicted of corruption in Colombia. Mr. Lopez has no

sentences for counts two and four through eleven, and for the reasons set forth below request that the Court impose a sentence below the advisory guideline range.

### I. Objections to The Presentence Report

The defendant objects to Page 3 and Paragraphs 134 and 164 of the Presentence Report which conclude that Mr. Lopez has a prior conviction for Course of Sexual Conduct Against a Child in the First Degree in violation of New York Penal Law § 130.75(A) and, therefore, is subject to enhanced minimum and maximum penalties pursuant to 18 U.S.C. § 2251(e). *See* PSR at 3, ¶¶ 134, 164. Pursuant to 18 U.S.C. § 2251(e), a defendant who violates this section

> "faces a mandatory minimum sentence of 15 years and a maximum penalty of 30 years. If the defendant has a prior conviction: "under th[at] chapter, section 1591, chapter 71, chapter 109A, or chapter 117, or under section 920 of title 10 (article 120 of the Uniform Code of Military Justice), or under the laws of any State relating to aggravated sexual abuse, sexual abuse, abusive sexual contact involving a minor or ward, or sex trafficking of children, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography, such person shall be fined under this title and imprisoned for not less than 25 years nor more than 50 years . . . ."

18 U.S.C.A. § 2251 (e.)

Probation is correct that on February 13, 2020, Mr. Lopez pleaded guilty to Course of Sexual Conduct Against a Child in the First Degree. However, on October 5, 2021, Judge Karen Gopee of the Supreme Court of the State of New York vacated Mr. Lopez's guilty plea. *See* Order of Judge Gopee, attached hereto as Exhibit A. On January 4, 2022, defense counsel provided a copy of Judge Gopee's order to Probation via email. Mr. Lopez no longer has a qualifying prior conviction. Thus, the defendant objects the Probation Office's determination that he faces a statutory minimum sentence of 25 years and a maximum term of 50 years on counts two and four through eleven. PSR at 3, ¶ 164. Rather, Mr. Lopez faces a mandatory minimum of 15 years and a maximum penalty of 30 years on those counts.

### II. Reasonable Sentence

We ask the Court to consider the factors in 18 U.S.C. § 3553(a) to arrive at a fair and reasonable sentence. Section 3553(a) requires a sentence that is "sufficient, but not greater than necessary" to satisfy specific sentencing goals, including just punishment, deterrence of future criminal conduct, correctional treatment, and the prevention of unwarranted sentencing disparities. *See* § 3553(a)(2). In determining the appropriate sentence, the Court must weigh several factors, including Mr. Lopez's personal history and characteristics, the unique nature and circumstances of the offense, and any mitigating factors that may exist. *See, e.g.*, *United States v. Hernandez*, 604 F.3d 48, 55 (2d Cir.

---

recollection of being prosecuted for corruption in Colombia.

2010) (vacating sentence based on district court's failure to consider "mitigating evidence" under § 3553(a)).

The Supreme Court has repeatedly affirmed a federal judge's ability to grant a variance from the advisory guideline range based on the § 3553(a) factors. *See, e.g., Beckles v. United States*, 137 S. Ct. 886, 892 (2017). The Supreme Court has also made clear that granting a variance does not require a showing of extraordinary or special circumstances. To the contrary, "courts are entitled to vary from the . . . guidelines in a mine-run case where there are no 'particular circumstances' that would otherwise justify a variance from the guidelines' sentencing range." *Spears v. United States*, 555 U.S. 261, 267 (2009) (internal quotation omitted). This case however does present significant and unique factors that compel a sentence below the advisory guideline range, including Mr. Lopez's extraordinary acceptance of responsibility; the extremely punitive nature of Mr. Lopez's pretrial and future detention; and, perhaps most importantly, the need to avoid an unnecessary designation to a high security facility within the Bureau of Prisons ("BOP").

### III.     Extraordinary Acceptance of Responsibility

The defendant is cognizant of the fact that the Court must consider the seriousness of the offense and the need for just punishment in fashioning the appropriate sentence. *See* 18 U.S.C. 3553(a)(2)(A). Indeed, it is hard to imagine conduct more egregious or in need of punishment than that underlying the convictions in this case. Nonetheless, the nature of the charges and the need for punishment are not the only factors the Court must consider in arriving at the appropriate sentence. The Court must also consider Mr. Lopez's personal history and characteristics.

Mr. Lopez was born and raised in Colombia under difficult economic circumstances. Although his father owned a pharmacy, he struggled with alcoholism and fidelity which caused a drain on the family finances. The family often struggled to provide basic necessities. Mr. Lopez recalls performing odd jobs for money and food when he was merely 6 years old.

These hardships paled in comparison to the extraordinary and vicious abuse that was afflicted upon Mr. Lopez during his childhood. Beginning when he was a young child and continuing until his preteen years, Mr. Lopez suffered severe and repeated physical abuse at the hands of his father. In the most severe instance, his father beat him with the butt of a gun. Mr. Lopez lost consciousness and was hospitalized because as a result. Perhaps the most traumatic aspect of his father's abuse, was the beating his father inflicted when at the age of 5 or 6, Mr. Lopez confided in his father that he had been brutally raped.

As a young child, Mr. Lopez was raped by a man in his 20's who was a friend of his father. The attack occurred when Mr. Lopez was taken on a hike with his father and a group of his father's friends. The attacker separated Mr. Lopez from the larger group and brutally raped him in the woods. He threatened to kill Mr. Lopez's family if he told anyone what had occurred. Despite this admonition, Mr. Lopez told his father what had happened. Rather than protect Mr. Lopez or offer him comfort, his father severely beat him.

Mr. Lopez had no one to turn to protect him from his father's abuse or to help him cope with what had happened to him. His mother did not intervene to shelter Mr. Lopez from his father's abuse. The abuse didn't wane until Mr. Lopez was approximately 12 and his father was largely absent from the home. When Mr. Lopez was about 15, his father returned to living in the family home more regularly. He appeared to have gained some insight into his behavior and apologized to Mr. Lopez. Mr. Lopez responded with forgiveness and developed a close relationship with his father throughout his adulthood and until his father's death.

Though by no means an excuse or justification, Mr. Lopez's experiences in childhood shed light on how a seemingly mild-mannered man could have committed such horrible crimes. Mr. Lopez has demonstrated sincere remorse for his crimes as well as an extraordinary acceptance of responsibility not reflected in the recommended guidelines range. He was initially arrested and charged in the Supreme Court of New York, Queens County, for conduct that is included in the charges of conviction in this case. Mr. Lopez agreed to waive indictment and plead guilty and accept a prison term of 19 years. *See* PSR ¶134. Given that he was 64 at the time of his plea, Mr. Lopez accepted the terms of the agreement knowing full well he might not survive his prison sentence.

That Mr. Lopez has since vacated his plea in state court does not bear on his remorse or acceptance of responsibility.[3] In this case, Mr. Lopez has essentially agreed to an even higher sentence. Pursuant to his plea agreement, he agreed not to request a sentence below 300 months (25 years.) Further, Mr. Lopez agreed not to appeal or otherwise challenge a sentence of 420 months (35 years) or less. At the time of the plea, the Court also advised Mr. Lopez that he could receive a maximum sentence of 50 years on several of the charges to run consecutively to each other and to a 10-year maximum sentence on count 12. Nonetheless, Mr. Lopez pleaded guilty and accepted responsibility for his actions despite the very realistic possibility that he would never live outside the walls of a federal prison again. Mr. Lopez made this decision to spare the victims, their families and his family of the burden and trauma of a prolonged trial.

### IV. The Extraordinarily Punitive Nature of Mr. Lopez's Pretrial Detention Weighs in Favor of a Downward Variance.

The inhumane conditions Mr. Lopez has endured during the more than 2 years he has spent in federal pretrial detention warrant a below guidelines sentence. On February 19, 2020[4], Mr. Lopez

---

[3] On February 13, 2020, Mr. Lopez pleaded guilty in Queens County Supreme Court, approximately a little over a week after the federal indictment was filed. Notwithstanding the fact that the U.S Attorney's Office for the Eastern District of New York issued a press release that same day thanking the Queens District Attorney's Office for their assistance, Mr. Lopez was not apprised of the federal charges or the potential ramification of his state plea in this case. *See* https://www.justice.gov/usao-edny/pr/queens-man-indicted-sexual-exploitation-and-child-pornography-charges. As a result, undersigned defense counsel contacted Mr. Lopez's state court attorney who then filed a motion to vacate the plea, and new counsel was appointed.

[4] Mr. Lopez has been in continuous custody since October 30, 2019, when he was arrested on the related state charges in Queens County.

was arrested by federal authorities and ordered detained. He has been incarcerated at the MDC continuously since that date. During this time, Mr. Lopez endured the severe and unrelenting burden of being incarcerated during the coronavirus pandemic. Additionally, Mr. Lopez suffers from comorbidities which increase his risk of serious illness of death if he contracts COVID. Mr. Lopez is 66 years old and suffers from high blood pressure, both of which have been identified as risk factors for serious illness or death if he were to contract COVID-19.

For almost 2 years, the BOP has imposed "onerous lockdowns and restrictions" to limit the spread of the virus within its facilities. *See United States v. Rodriguez*, 492 F. Supp. 3d 306, 311 (S.D.N.Y. 2020). Regardless of the rationale behind the lockdowns and restrictions, it cannot be denied that the sentences of those incarcerated during this time are "harsher and more punitive than would otherwise have been the case." *Id. See also United States v. Hatcher*, 2021 WL 1535310, at *3 (S.D.N.Y. Apr. 19, 2021.); *United States v. Mcrae*, 2021 WL 142277, at *5 (S.D.N.Y. Jan. 15, 2021); and *United States v. Ciprian*, 2021 U.S. Dist. LEXIS 18698, at *8 (S.D.N.Y. Feb. 1, 2021.)

One of the overlooked ramifications of the BOP's response to the pandemic is the strain it has put on the ability of families to maintain contact and relationships. Throughout much of the pandemic, social visiting was completely suspended, and phone use was restricted due to lockdowns. Unlike state correctional facilities, the BOP has made no efforts to establish video social visiting for incarcerated persons. For inmates like Mr. Lopez, this meant that they were simply unable able to see their loved ones while in federal custody during most of the pandemic. Mr. Lopez is appreciative that the Court issued an order allowing his elderly mother (who lives in Colombia) and his brother to participate in a video teleconference from the MDC.

Acknowledging the increased punitive nature of confinement during COVID, courts in the Eastern and Southern Districts of New York have found these harsher conditions to be an appropriate basis for a downward variance at sentencing. *E.g.*, *United States v. Clark*, No. 20-cr-241 (NGG) (E.D.N.Y. May 7, 2021) (imposing 96 months in armed robbery case where bottom of guidelines range was 114 months); *United States v. Narcissi*, No. 20-cr-449 (RPK) (E.D.N.Y. Mar. 15, 2021) (imposing time-served sentence of 7 months, where guidelines range was 24-30 months); *United States v. Colon*, No. 15-cr-317 (MKB) (E.D.N.Y. Nov. 20, 2020) (imposing 18 months, consecutive to defendant's 18- month state sentence, where bottom of guidelines was 100 months); *United States v. Shi*, No. 19-cr-451 (PKC) (E.D.N.Y. Nov. 2, 2020) (imposing no prison where guidelines range was 12-18 months); *United States v. Piper*, No. 18-cr-008 (AMD) (E.D.N.Y. June 25, 2020) (imposing time-served sentence on resentencing where defendant had served approximately 24 months and bottom of guidelines range was 63 months). *See also, e.g.*, *United States v. Searles*, No. 19-cr-381 (GBD) (S.D.N.Y. Mar. 25, 2021) (imposing 48-month sentence in Hobbs Act robbery case where bottom of guidelines range was 120 months); *United States v. Soto*, No 19-cr-903 (KMW) (S.D.N.Y. Mar, 19, 2021) (imposing 60-month sentence where bottom of guidelines range was 120 months); *United States v. Marmolejo*, No. 20-cr-1 (JSR) (S.D.N.Y. Feb. 3, 2021) (imposing 18-month sentence where bottom of guidelines range was 87 months); *United States v. Almonte*, No. 19-cr-621 (RA) (S.D.N.Y. Jan. 14, 2021) (imposing 15-month sentence where bottom of guidelines range was 51 months); *United States v. Garcia*, No. 19-cr-593 (PAC) (S.D.N.Y. Dec. 3, 2020) (imposing 48-month sentence where bottom of guidelines range was 110 months); *United States v. Camacho*, No. 19-cr-389 (CM) (S.D.N.Y. Nov 19, 2020) (imposing time- served sentence where bottom of

guidelines range was 57 months); *United States v. Paulino*, No. 19-cr- 607 (AJN) (S.D.N.Y. Oct. 21, 2020) (imposing time-served sentence where bottom of guidelines range was 27 months); *United States v. Cirino*, No. 19-cr-323 (JSR) (S.D.N.Y. July 21, 2020) (imposing10-month sentence where bottom of guidelines range was 57 months); *United States v. Aracena de Jesus*, No. 20-cr-19 (PAE) (S.D.N.Y. July 1, 2020) (imposing time-served sentence where bottom of guidelines range was 30 months).

The increased punitive nature of Mr. Lopez's pretrial detention offers an additional justification for the variance we request.

### V.  A Guidelines Sentence Would Result in Mr. Lopez's Unnecessary Designation to a High Security Facility.

Given Mr. Lopez's age, even a mandatory minimum sentence of 15 years could functionally be a life sentence. A sentence consistent with the guidelines and that statutory maximum sentence in the range of hundreds of years[5] would only serve to result in Mr. Lopez being unnecessarily designated to a high security level institution for the rest of his life, notwithstanding the fact that he presents no danger while incarcerated.  Pursuant to BOP Program Statement 5100.08, a male inmate with more than 30 years remaining on his sentence "will be housed in High security level institution . . . ."[6] *See* BOP Program Statement 5100.08, Chapter 5, at 9, I.[7]

For an incarcerated person with a sentence greater than 30 years, the only way to avoid a designation to "High security level" institution is if the Public Safety Factor ("PSF") is waived. *Id.* However, because Mr. Lopez is not a citizen of the United States and is presumptively deportable as a result of this conviction, pursuant to BOP Program Statement 5100.08, the PSF may not be waived. *See* BOP Program Statement 5100.08, Chapter 5, at 9, H. There is no colorable argument that Mr. Lopez poses a threat while incarcerated. Mr. Lopez has been incarcerated for over 2 years at the MDC, under what have been undoubtedly the harshest of conditions. His conduct has been exemplary. He has not sustained a single disciplinary infraction and has availed himself of the extremely limited opportunities to engage in productive programing. *See* PSR ¶150.

The high security level designation would also impair the Court's ability to provide for effective correctional treatment. Section 3553(a)(2)(d) provides that the Court shall consider the need for effective correctional treatment. *See* 18 U.S.C. §3553(a)(2)(d). In this case an important component of the sentence is sex offender treatment. According to the BOP website, the only high security facility

---

[5]  Whether the Court concurs with Probation or the defendant regarding the applicable statutory maximum penalty, the resulting guidelines ranges is more than 200 years.

[6]  *See* https://www.bop.gov/policy/progstat/5100_008cn.pdf.

[7]  A male inmate with more than 20 years remaining on his sentence will be designated to medium security facility. BOP Program Statement 5100.08, Chapter 5, at 9, I.

that offers sex offender treatment is in Tucson, Arizona.[8] Thus, the BOP cannot provide for treatment while at the same time adhering to the First Step Act's directive to designate incarcerated person within 500 driving miles of their primary residence. *See* 18 U.S.C. §3621(b). Such a designation would make it impossible for Mr. Lopez to maintain contact with his family support system in the United States who reside in New York and New Jersey.

## VI. Mr. Lopez's Age Warrants a Downward Variance.

A Guidelines sentence of life would be greater than necessary under 18 U.S.C. §3553 as it would unnecessarily imprison Mr. Lopez beyond when he poses a threat to society. A sentence that incarcerates a man for his natural life, serves no valid sentencing purpose save for pure retribution, which as noted above, is but one of several factors the Court must consider, and which can be satisfied by a term less than a term less than that recommended by the guidelines, or the 50-year sentence recommended by Probation. Further, as discussed above, due to Mr. Lopez's age, the sentence term imposed by the Court will likely have a bigger impact on the conditions of Mr. Lopez's confinement than on the length of his sentence. While punishment is an appropriate sentencing consideration, it must not be cruel. U.S. Const., 8th Amendment. Requiring Mr. Lopez – a 66-year-old man, with a number of health issues, convicted of crimes which potentially make him a target of violence by other inmates -- to spend the remainder of his life, potentially decades, in a high security federal facility is not only unnecessary it is cruel.

Scholars have noted that lengthy sentences are contributing to a rapidly aging prison population and have questioned the necessity and wisdom of keeping old and often sick men and women behind bars. *See*, e.g., K. Kim and B. Peterson, *Aging Behind Bars, Trends and Implications of Graying Prisoners in the Federal System* (Urban Institute, Aug. 2014);[9] American Civil Liberties Union, *Report: At America's Expense: The Mass Incarceration of the Elderly* (June 2012).[10] For example, an Urban Institute study noted that in 2011 only three percent of the federal prison population was over 65 years old but that number was expected to triple by 2019. Kim and Peterson, *supra*, at v. Prisoners 50 and older could make up 28 percent of the BOP population by 2019. Id. Current statistics available on the BOP website indicate that the percentage of inmates aged 51 and over is now 19.3 percent[11]. Crucially, the chronological age of this population understates the problem because prisoners tend to have health problems associated with persons 10 to 15 years older than their actual age. *Id*. at 4.

According to a 2016 report by the Office of the Inspector General ("OIG,") BOP data

---

[8] *See* https://www.bop.gov/inmates/custody_and_care/sex_offenders.jsp#:~:text=The%20Bureau%20offers%20sex%20offender,%3A%20residential%20and%20non%2Dresidential.

[9] *See* www.urban.org/UploadedPDF/413222-Aging-Behind-Bars.pdf.

[10] *See* www.aclu.org/files/assets/elderlyprisonreport_20120613_1.pdf.

[11] *See* https://www.bop.gov/about/statistics/statistics_inmate_age.jsp.

indicated that incarcerated persons ages 50 and older were the fastest growing segment of the inmate population and increasing by twenty-five percent between 2009 and 2013. *See* Office of the Inspector General, U.S. Department of Justice, *The Impact of an Aging Inmate Population on the Federal Bureau of Prisons,* (May 2015) (Revised February 2016.)[12] Further, the OIG found that BOP facilities not only lacked the necessary staffing levels to provide for elderly inmates, but that the staff had insufficient training to address the unique needs of the population. *Id.*

Much of the focus in policy debates has been on the costs associated with incarcerating the elderly. The defense recognizes that cost, *in and of itself*, is not a proper consideration at sentencing. *United States v. Park*, 758 F.3d 193 (2d Cir. 2014). Nonetheless, what motivates this concern about cost fits squarely within Section 3553, namely that the purposes of sentencing generally do not require sentences that keep people in prison into their elderly years, when they no longer pose a threat to society or present a danger of recidivism. It is not the high cost, but the absence of any 3553-recognized benefit, that should concern the Court.

The need for deterrence in this case clearly does not require a guidelines term. Obviously, severe punishment is warranted but a term of life – as opposed to a term involving, for example, two-and-a-half decades in prison as the defendant is constrained to request – provides little additional deterrence. No one would view a sentence involving decades as lenient, nor would anyone who could be deterred from such a crime fail to be deterred because they would "only" be forfeiting decades behind bars. *See e.g., United States v. Bannister*, 786 F.Supp.2d 617, 660 (E.D.N.Y. 2011) ["[T]he deterrent value of a sentence is highest when the chances of its being administered are high and the offender is able to rationally consider the consequences of his or her actions. It appears to be primarily in the certainty of punishment, not its severity, that deterrent power lies."] As noted, this is truer still as applied to a man who is 66 years old at the time his sentence is imposed.

In this case, the requested downward variance would likely serve to address the conditions of Mr. Lopez's confinement making them more appropriate and humane rather than reduce his actual punishment.

---

[12] https://oig.justice.gov/reports/2015/e1505.pdf.

### VII. Conclusion

There is no doubt that Mr. Lopez committed heinous crimes deserving of serious punishment. However, when the Court considers the 3553(a) factors in accord with Mr. Lopez's extraordinary acceptance of responsibility; the extremely punitive nature of his pretrial and future detention; and perhaps most importantly the need to avoid an unnecessary and cruel designation to a high security facility within the Bureau of Prisons ("BOP.") Given his age, it is clear that a sentence within the advisory guideline range is greater than necessary to achieve the goals of sentencing. For the above stated reasons, we submit that the goals of sentencing will be served by the imposition of a sentence below the advisory guideline range

Respectfully Submitted,

/s/

Michelle Gelernt
(718) 330-1204
*Counsel to Orlando Lopez*

cc.  Tanya Hajjar, AUSA [by email & ECF]
     Clerk of the Court [by ECF]