

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

TH
F. #2019R01574

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

March 25, 2022

By ECF

The Honorable Eric R. Komitee
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Orlando Lopez
               Criminal Docket No. 20-52 (EK)

Dear Judge Komitee:

      The government respectfully submits this letter in advance of the sentencing of the defendant Orlando Lopez. The defendant is scheduled to be sentenced on April 8, 2022 at 2:30 p.m.

      On July 27, 2021, the defendant pleaded guilty to Counts Two, Four, Five, Six, Seven, Eight, Nine, Ten, Eleven and Twelve of the indictment, charging him with nine counts of sexual exploitation of a child in violation of 18 U.S.C. § 2251(a) and one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B).

      The government respectfully submits that the applicable Guidelines range and the relevant factors under 18 U.S.C. § 3553(a) warrant a sentence of life imprisonment. The Court should also order payment of restitution to the victims.

      I.       Background

      The facts underlying the offense conduct in this case are set forth in the Presentence Investigation Report ("PSR") prepared by the United States Probation Department on January 4, 2022 and the Addendum to the PSR prepared on March 18, 2022, to which the government has no objection.

      An investigation by the New York City Police Department ("NYPD") was initiated after the defendant's landlord provided New York City Police Department

("NYPD") officers with a memory card on which the landlord had discovered images and video depicting the defendant engaging in sexual acts with children. PSR ¶¶ 14-15, 21. The landlord subsequently told law enforcement that the defendant frequently had children over to his apartment without adult supervision, and that on one occasion, he had observed the defendant throw away children's clothing and bathing suits. Id.

On October 31, 2019, NYPD officers interviewed a nine-year-old child ("Jane Doe #1"), her sister ("Jane Doe #4") and their mother. Jane Doe #1's mother told officers that the defendant was Jane Doe #1's godfather and that Jane Doe #1 was close with him. PSR ¶¶ 16-19. According to Jane Doe #1's mother, the defendant purchased a cell phone for Jane Doe #1 and paid the bill. He also visited the children, took them to the park and to the movie theater, and paid for everything when he was with them. Id.

When interviewed, Jane Doe #1 identified the defendant as her "grandpa." PSR ¶ 17. Jane Doe #1 also stated that the defendant touched her private parts and instructed her not to tell her mother. Id. Jane Doe #1 reported that the defendant touched the private parts of her friend, Jane Doe #5, and her friend's brother, John Doe #1, and took pictures of all of them. Id. She also stated that the defendant had grabbed her head to force her and Jane Doe #5 to lick his "front private part." Id. Jane Doe #1 also stated that the defendant had touched her "front private part" with his "front private part" and that it had "hurt." Id.

Jane Doe #4 also referred to the defendant as her "grandpa" and told law enforcement that the defendant took Jane Doe #1 and Jane Doe #4 to a nearby pool and took naked photographs of both of them. PSR ¶ 18.

On November 25, 2019, the Federal Bureau of Investigation ("FBI") sought and obtained a search warrant to undertake a forensic review of approximately thirty-five devices that had been seized from the defendant's residence. PSR ¶ 23. A forensic analysis of the devices revealed that the defendant had created approximately 13,000 files of child pornography, depicting at least 28 different victims. Id. Of those victims, the FBI was able to identify 15 victims:

|  | **Age at Time of Abuse** | **Number of Images** | **Number of Videos** |
| --- | --- | --- | --- |
| Jane Doe #1 | Age 3 to 9 | 3,208 | 249 |
| Jane Doe #2 | Infant to age 10 | 7,758 | 54 |
| Jane Doe #3 | Age 4 to 6 | 67 | 0 |
| Jane Doe #4 | Age 9 | 11 | 0 |
| Jane Doe #5 | Age 3 to 8 | 554 | 74 |
| Jane Doe #6 | Age 5 to 9 | 149 | 5 |
| John Doe #1 | Age 4 to 6 | 221 | 35 |
| John Doe #2 | Age 6 | 10 | 4 |
| Additional Victim #1 | Infant to age 2 | 31 | 0 |

| | | | |
|---|---|---|---|
| Additional Victim #2 | Age 5 to 6 | 33 | 0 |
| Additional Victim #3 | Age 6 | 5 | 0 |
| Additional Victim #4 | Age 8 | 4 | 0 |
| Additional Victim #5 | Age 2 | 2 | 0 |
| Additional Victim #6 | Unknown | 5 | 0 |
| Additional Victim #7 | Unknown | 13 | 0 |

Id. Numerous images and videos depict more than one victim together, and some videos depict the victims performing sexual acts on each other, including victims who are siblings. PSR ¶¶ 24-25. A significant number of the images and videos depict the defendant directly engaged in sexual acts with the victims, including penetrative and oral sex. PSR ¶¶ 25-26. For example, one video that was created on May 12, 2015 depicts the defendant engaging Jane Doe #1 (who was then four years old) in a variety of sexual acts, including rubbing his penis on and around her vagina and ejaculating on her. Id. Another video that was created on August 21, 2019 depicts John Doe #2 (who was then approximately six years old) performing oral sex on the defendant, after which the defendant ejaculated in John Doe #2's mouth. Id.

Based on the FBI's review of the child pornography the defendant produced, the defendant typically abused his victims in his home or their homes, but on occasion abused them in other locations, including a local YMCA facility. PSR ¶ 27. In most of the videos, the defendant is visible or audible. During the course of his sexual abuse of his victims, the defendant often provided the victims with candy, toys, and phones in an attempt to distract them. Id.

The child pornography files produced by the defendant were sent by the FBI to the National Center for Missing and Exploited Children ("NCMEC") for review. PSR ¶ 28. The review conducted by NCMEC determined that many of the files produced by the defendant were "seen before," indicating that the defendant had distributed at least some of the child pornography he created to others. Id.

In addition to the child pornography files created by the defendant, forensic analysis has identified 147 files (62 images and 85 videos) of child pornography that had been re-produced from existing commercial child pornography. PSR ¶ 29. Lastly, forensic analysis revealed approximately 28,000 files containing commercial child pornography, depicting children in a wide range of ages, including infants and toddlers, and depictions of bondage. Id.

3

To avoid re-traumatizing child victims, the FBI conducted only "minimal facts" interviews of some of the victims depicted in the child pornography created by the defendant. Jane Doe #1 stated, among other things, that the defendant took Jane Doe #1 and Jane Doe #5 to New Jersey during the summer and abused Jane Doe #1. Jane Doe #5 told the FBI, among other things, that the defendant "made" her, Jane Doe #1, John Doe #1, and John Doe #2 take their clothes off but that they never wanted to. Jane Doe #5 also stated that if Jane Doe #1 told the defendant that she did not want to do anything with him, the defendant would say, "you have to."

Jane Doe #4 told the FBI, among other things, that the defendant took photographs of her naked. Jane Doe #4 further stated that the defendant gave her cookies and told her the photographs would win her money.

II. Applicable Law

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007) (citation omitted); see also United States v. Booker, 125 S. Ct. 738, 743 (2005) (although the Guidelines are advisory, district courts are still "require[d] . . . to consider Guidelines ranges" in determining a sentence).

Significantly, however, the Court "may not presume that the Guidelines range is reasonable. [It] must make an individualized assessment based on the facts presented." Gall, 552 U.S. at 50. Title 18, United States Code, Section 3553(a) provides that, in imposing sentence, the Court shall consider (1) the nature and circumstances of the offense and the history and characteristics of the defendant; and (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; and (C) to protect the public from further crimes of the defendant.

Title 18, United States Code, Section 3661 directs the Court to consider all relevant conduct and information about the defendant when sentencing him or her: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." As a result, "the court is

4

virtually unfettered with respect to the information it may consider." United States v. Alexander, 860 F.2d 508, 513 (2d Cir. 1988).

 III. Sentencing Guidelines

The government agrees with the Probation Department's calculation of the Guidelines, as follows:[1]

Count Two (Exploitation of Jane Doe 2)

| | |
|---|---:|
| Base Offense Level (§ 2G2.1(a)) | 32 |
| Plus: The offense involved a minor who had not attained the age of 12 years (§ 2G2.1(b)(1)) | +4 |
| Plus: The offense involved the commission of a sexual act or sexual contact (§ 2G2.1(b)(2)(A)) | +2 |
| Plus: The offense involved material that portrays an infant or toddler (§ 2G2.1(b)(4)) | +4 |
| Plus: Minor was in the custody, care, or supervisory control of the defendant (§ 2G2.1(b)(5)) | +2 |
| Total: | 44 |

Count Four (Exploitation of Jane Doe 3)

| | |
|---|---:|
| Base Offense Level (§ 2G2.1(a)) | 32 |
| Plus: The offense involved a minor who had not attained the age of 12 years (§ 2G2.1(b)(1)) | +4 |
| Plus: Minor was in the custody, care, or supervisory control of the defendant (§ 2G2.1(b)(5)) | +2 |

---

[1] The government included a four-level enhancement for portrayal of an infant or toddler pursuant to § 2G2.1(b)(4) in its Guidelines estimate as to Counts Four, Seven, Ten and Eleven. Since Jane Doe 3, John Doe 1, Jane Doe 6, and John Doe 2 were under the age of 12 but older than three years old at the time of their abuse by the defendant, the Probation Department is correct not to include the four-level enhancement as to those counts. The government notes, however, that whether or not the enhancement applies has no impact on the overall Guidelines calculation.

Total: <u>38</u>

Count Five and Eight-A (Exploitation of Jane Doe 4)

    Base Offense Level (§ 2G2.1(a))      32

    Plus: The offense involved a minor who had not attained the age of 12 years (§ 2G2.1(b)(1))      +4

    Plus: Minor was in the custody, care, or supervisory control of the defendant (§ 2G2.1(b)(5))      <u>+2</u>

    Total:      <u>38</u>

Count Six (Exploitation of Jane Doe 1)

    Base Offense Level (§ 2G2.1(a))      32

    Plus: The offense involved a minor who had not attained the age of 12 years (§ 2G2.1(b)(1))      +4

    Plus: The offense involved the commission of a sexual act or sexual contact (§ 2G2.1(b)(2)(A))      +2

    Plus: The offense involved material that portrays an infant or toddler (§ 2G2.1(b)(4))      +4

    Plus: Minor was in the custody, care, or supervisory control of the defendant (§ 2G2.1(b)(5))      <u>+2</u>

    Total:      <u>44</u>

Count Seven and Eight-C (Exploitation of John Doe 1)

    Base Offense Level (§ 2G2.1(a))      32

    Plus: The offense involved a minor who had not attained the age of 12 years (§ 2G2.1(b)(1))      +4

    Plus: The offense involved the commission of a sexual act or sexual contact (§ 2G2.1(b)(2)(A))      +2

    Plus: Minor was in the custody, care, or supervisory control of the defendant (§ 2G2.1(b)(5))      <u>+2</u>

| | |
|---|---:|
| Total: | <u>40</u> |

Count Nine and Eight-B (Exploitation of Jane Doe 5)

| | |
|---|---:|
| Base Offense Level (§ 2G2.1(a)) | 32 |
| Plus: The offense involved a minor who had not attained the age of 12 years (§ 2G2.1(b)(1)) | +4 |
| Plus: The offense involved the commission of a sexual act or sexual contact (§ 2G2.1(b)(2)(A)) | +2 |
| Plus: The offense involved material that portrays an infant or toddler (§ 2G2.1(b)(4)) | +4 |
| Plus: Minor was in the custody, care, or supervisory control of the defendant (§ 2G2.1(b)(5)) | <u>+2</u> |
| Total: | <u>44</u> |

Count Ten (Exploitation of Jane Doe 6)

| | |
|---|---:|
| Base Offense Level (§ 2G2.1(a)) | 32 |
| Plus: The offense involved a minor who had not attained the age of 12 years (§ 2G2.1(b)(1)) | +4 |
| Plus: The offense involved the commission of a sexual act or sexual contact (§ 2G2.1(b)(2)(A)) | +2 |
| Plus: Minor was in the custody, care, or supervisory control of the defendant (§ 2G2.1(b)(5)) | <u>+2</u> |
| Total: | <u>40</u> |

Count Eleven (Exploitation of John Doe 2)

| | |
|---|---:|
| Base Offense Level (§ 2G2.1(a)) | 32 |
| Plus: The offense involved a minor who had not attained the age of 12 years (§ 2G2.1(b)(1)) | +4 |
| Plus: The offense involved the commission of a sexual act or sexual contact (§ 2G2.1(b)(2)(A)) | +2 |

Plus: Minor was in the custody, care, or supervisory control
of the defendant (§ 2G2.1(b)(5))    +2

Total:    <u>40</u>

Count Twelve (Possession of Child Pornography)

Base Offense Level (§ 2G2.2(a)(1))    18

Plus: Material involves a prepubescent minor (§ 2G2.2(b)(2))    +2

Plus: Material involves sexual abuse or exploitation
of an infant or toddler (§ 2G2.2(b)(4)(B))    +4

Plus: Offense involved use of computer
(§ 2G2.2(b)(6))    +2

Plus: Offense involved more than 600 images
(§ 2G2.2(b)(7)(D))    <u>+5</u>

Total:    <u>31</u>

Multiple Count Analysis (§§ 3D1.1, 3D1.4)

Highest Adjusted Offense Level:    44

|  |  | Level | Units |
|---|---|---|---|
| Group 1: | Count Two | 44 | 1 unit |
| Group 2: | Count Four | 38 | 1/2 unit |
| Group 3: | Counts Five and Eight-A | 38 | 1/2 unit |
| Group 4: | Count Six | 44 | 1 unit |
| Group 5: | Counts Seven and Eight-C | 40 | 1 unit |
| Group 6: | Counts Nine and Eight-B | 44 | 1 unit |
| Group 7: | Count Ten | 40 | 1 unit |
| Group 8: | Count Eleven | 40 | 1 unit |
| Group 9: | Count Twelve | 31 | 0 units |
|  | Total Units |  | <u>7 units</u> |

| | | |
|---|---|--:|
| Plus: | 5 Levels (§ 3D1.4) | +5 |
| Plus: | Pattern of activity involving prohibited sexual conduct (§ 4B1.5(b)(1)) | +5 |
| Less: | Acceptance of Responsibility (§ 3E1.1(a) and (b)) | -3 |
| Total: | | __51__ |

Where a total offense level is calculated in excess of 43, the offense level will be treated as level 43. Based on a total offense level of 43 and a criminal history category of I, the applicable Guidelines range is life imprisonment.

IV. <u>A Guidelines Sentence Is Warranted</u>

The government respectfully submits that a Guidelines sentence of life imprisonment is necessary to provide just punishment and to protect the community from further crimes by the defendant.

The seriousness of the defendant's crimes cannot be overstated. As the defendant himself acknowledged in his sentencing memorandum, "it is hard to imagine conduct more egregious or in need of punishment than that underlying the convictions in this case." Def. Sentencing Mem. at 3. For over a decade, the defendant raped and sexually exploited over a dozen small children and took photographs and videos of his abuse. The abuse began in approximately 2008, when the defendant moved into the apartment building in Queens where the mother of Jane Doe #2—who was several months pregnant at the time—lived. The defendant, who was then approximately 53 years old, began abusing Jane Doe #2 soon after she was born. Over the next decade, the defendant produced thousands of sexually explicit photographs and videos of Jane Doe #2 as she grew from an infant to a toddler to a small child. The defendant also used Jane Doe #2 to identify and gain access to additional victims, including her friends and their siblings.

The defendant treated his victims like objects for his own pleasure, forcing them to have penetrative oral and sexual intercourse with him and, at times, with each other. In some videos, the defendant attempted to distract his victims by providing them with toys, candy or other sweets as he caused them pain and distress by sexually abusing them. The defendant then compounded his abuse by recording it in photographs and video and distributing the child pornography to others.[2]

---

[2] Words cannot adequately convey the cruelty and brutality depicted in the videos and images of child abuse the defendant created. The government will make a subset of these videos and images available for the Court's review in advance of sentencing at its request.

9

Courts have long recognized that childhood sexual abuse has devastating and long-lasting effects. In Kennedy v. Louisiana, in which the Supreme Court held that capital punishment could not be imposed for the crime of child rape, the majority opinion nevertheless observed:

> [T]he victim's fright, the sense of betrayal, and the nature of her injuries caused more prolonged physical and mental suffering than, say, a sudden killing by an unseen assassin. The attack was not just on her but on her childhood. . . . Rape has a permanent psychological, emotional, and sometimes physical impact on the child. We cannot dismiss the years of long anguish that must be endured by the victim of child rape.

Kennedy v. Louisiana, 554 U.S. 407, 435 (2008); see also United States v. Reingold, 731 F.3d 204, 216 (2d Cir. 2013) ("As Congress, courts, and scholars all recognize, child pornography crimes at their core demand the sexual exploitation and abuse of children. Not only are children seriously harmed—physically, emotionally, and mentally—in the process of producing such pornography, but that harm is then exacerbated by the circulation, often for years after the fact, of a graphic record of the child's exploitation and abuse."); United States v. Broxmeyer, 699 F.3d 265, 283 (2d Cir. 2012) ("As the Supreme Court has recognized, distribution of child pornography subjects the depicted child to more harm than that caused by production alone.")

Although the child victims in this case are still too young to submit victim impact statements—and are likely too young to fully comprehend the nature and scope of the damage caused to them—the government has received victim impact statements from some of their family members. These statements, which will be provided to the Court, reflect that the defendant is responsible for causing unimaginable anguish. The mother of Jane Doe #5 and John Doe #1 submitted a statement explaining that her daughter and son have "suffered a lot" at the hands at the defendant and that, as a result of the abuse, she is unable to get a job because she needs to "spend [her] time taking care of [her] children." The father of Jane Doe #5 and John Doe #1 states that he hopes "there is justice" and that the defendant "pays for it by going to jail."

Similarly, the father of John Doe 2 submitted a statement requesting that the Court impose a sentence "with the full force of the law for every tear that [the defendant] made us cry, for every trauma that my family went through, for every night of insomnia, for every day, week, month, years of anguish and pain that we suffer today as victims of this villain."

10

The grandmother of Additional Victim #2 also submitted a victim impact statement detailing the "impact these horrible events have had on our entire family." She wrote:

> To truly understand the impact the sexual abuse has had on [Additional Victim #2's] life, you must understand the child [Additional Victim #2] was before the abuse started. She was a little girl who was always smiling and enjoying life. In the words of her father "they took our baby's smile away forever." [Additional Victim #2] struggles with looking at childhood pictures/memories of herself because she remembers the abuse that was happening around the same time. . . .
>
> It is unfortunate that any little girl must deal with overwhelming emotional stress due to the disgusting sickening acts of an elderly man who deserves to rot in prison for the rest of his life. It is unimaginable that a repelling man's nauseating urges has caused irreversible, irreparable, everlasting damage to our entire family. He had his moments of pleasure, while our little girl is stained for the rest of her life! Trauma we must carry throughout our family, including her younger siblings over these life changing events that no child should ever have to deal with. This monster does not have any idea of the damage he has caused.
>
> Today and for the rest of our lives, we must mourn the loss of the innocence and happiness of our little girl. The sentencing of Orlando will certainly not bring our baby's smile back, but it will assure that he never commits these heinous acts on a child ever again.
>
> We have hope that one day [Additional Victim #2] will build the strength to tell her story and be an advocate for other victims that have yet to gain their voice. This is only a faint description of how these agonizing events have forever changed the life of [Additional Victim #2] and our family. I hope that you acknowledge the fact that our lives will never be the same and this will be an endless battle we have to fight every single day for the rest of our lives.

As these victim impact statements make clear, the defendant has caused devastating emotional and psychological harm not only to the children he victimized, but to their families and loved ones.

The government respectfully submits that a Guidelines sentence of life imprisonment is necessary to provide appropriate punishment, to protect the public from further crimes by the defendant, to promote respect for the law, and to discourage others from committing similar crimes.

V.      The Court Should Reject the Defendant's Requests for a Downward Variance

In recognition of the egregious nature of the defendant's crimes, the plea agreement the government negotiated with the defendant in this case prohibits the defendant from seeking a sentence of incarceration under 25 years at sentencing. See Plea Agreement at ¶ 2 ("The parties agree that the defendant may seek a non-Guidelines sentence, but may not seek a sentence below 300 months' imprisonment.").[3]

The defendant argues that the Court should downwardly depart from a Guidelines sentence because he has been detained at the Metropolitan Detention Center ("MDC") during power outages and the COVID-19 pandemic. Def. Mem. at 4-5. Though "pre-sentence confinement conditions may in appropriate cases be a permissible basis for downward departures," United States v. Carty, 264 F.3d 191, 196 (2d Cir. 2001), courts typically grant such departures only where "the conditions in question [were] extreme to an exceptional degree and their severity [fell] upon the defendant in some highly unusual or disproportionate manner." United States v. Mateo, 299 F. Supp. 2d 201, 208 (S.D.N.Y. 2004). The defendant has not and cannot show that the conditions at the MDC impacted him in an exceptional or more severe manner than any other MDC inmate. The conditions of confinement at MDC are therefore not a basis for a downward departure. See United States v. Robinson, 799 F.3d 196, 199 (2d Cir 2015) (finding no error in district court's denial of a downward departure despite defendant's allegations of pre-trial confinement facility having, among other things, unsanitary food preparation, no heating system, leaks, insect infestations and violent gang members housed with non-gang affiliated inmates).

The defendant further argues that the defendant's age is a separate basis to impose a below-Guidelines sentence. The defendant is currently 66, and has been violently abusing small children for over a decade. The Second Circuit has refused to entertain arguments that a defendant's older age reflects a decreased risk of recidivism "where the evidence shows that aging clearly has not increased a defendant's respect for the law." United States v. Turner, 629 F. App'x 66, 68 (2d Cir. 2015) (summary order) (internal quotation marks and alterations omitted) (quoting United States v. Trupin, 475 F.3d 71, 76 (2d Cir. 2007), vacated on other grounds, 552 U.S. 1089 (2008)); cf. U.S.S.G. § 5H1.1 (noting that age "may be relevant in determining whether a departure is warranted if considerations based on age . . . are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines").

---

[3]     The government entered into a plea agreement in this case in order to spare traumatized child victims from having to testify at trial, as would have been necessary to prove Count One beyond a reasonable doubt.

12

Despite his age, the defendant repeatedly preyed on dozens of children for his own sexual gratification. There is little doubt that if the defendant had not been arrested, his sexual exploitation of children would have continued. Advanced age will not prevent the defendant from sexually exploiting vulnerable infants and toddlers. For this reason, the defendant's claim that he will not "pose a threat to society or present a danger of recidivism" in his "elderly years," Def. Mem. at 8, is without merit. Indeed, a sentence of life imprisonment is particularly warranted where, as here, the defendant has committed offenses for which Congress has made specific findings about the likelihood of recidivism. See H.R. Rep. No. 107-527, at 2 (2002) (noting that "studies have shown that sex offenders are four times more likely than other violent criminals to recommit their crimes" and that "recidivism rates do not appreciably decline as offenders age").

VI. Victim Notification and Restitution

To the extent practicable, the government has made notification to the defendant's victims, both those identified by the FBI in the child pornography the defendant created and those victims identified depicted in commercial child pornography possessed by the defendant. The government has also contacted these victims to apprise them of their right to restitution.

Title 18, United States Code, Section 2259 provides for mandatory restitution for victims of child exploitation and child pornography offenses. Specifically, the statute provides, in relevant part, that the order of restitution "shall direct the defendant to pay the victim (through the appropriate court mechanism) the full amount of the victim's losses." 18 U.S.C. § 2259(b)(1). "The term 'full amount of the victim's losses' includes any costs incurred by the victim for: (A) medical services relating to physical, psychiatric, or psychological care; (B) physical and occupational therapy or rehabilitation; (C) necessary transportation, temporary housing, and child care expenses; (D) lost income; (E) attorney's fees, as well as other costs incurred; and (F) any other losses suffered by the victim as a proximate result of the offense." 18 U.S.C. § 2259(b)(3).

Neither the government nor the Probation Department has yet received any affidavits of loss from the victims of child exploitation identified in this case. See PSR ¶ 42. With respect to Count Twelve, the defendant's possession of commercial child pornography, the government has received requests for restitution as to eight child victims in the amounts of $3,000 each. PSR ¶ 43 (listing the name of the series, pseudonyms associated with each victim, and amounts requested). The government agrees with the Probation Department that the Court should order $3,000 in restitution for each of the eight victims of commercial child pornography in this case. Should the government or the Probation Department receive

additional requests for restitution or affidavits of loss from victims, the government will promptly notify the Court.[4]

VII. Conclusion

For the reasons set forth above, the government respectfully submits that the Court should impose a Guidelines sentence of life imprisonment on the defendant.

Respectfully submitted,

BREON PEACE
United States Attorney

By:    /s/
Tanya Hajjar
Assistant U.S. Attorney
(718) 254-6109

cc: Michelle Gelernt, Esq. (by ECF and e-mail)

---

[4] The Court may order restitution within 90 days following sentencing. See 18 U.S.C. § 3664 ("If the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing. If the victim subsequently discovers further losses, the victim shall have 60 days after discovery of those losses in which to petition the court for an amended restitution order."); Dolan v. United States, 560 U.S. 605, 608 (2010) ("We hold that a sentencing court that misses the 90-day deadline nonetheless retains the power to order restitution—at least where, as here, the sentencing court made clear prior to the deadline's expiration that it would order restitution, leaving open (for more than 90 days) only the amount."). Under Dolan, as long as the Court orders restitution at sentencing in an amount to later be determined, it can then amend the judgment at a later date (even after the statutory 90-day period expires). See id. The Court may amend the judgment based on written submissions by the parties, rather than holding a hearing. See United States v. Pickett, 612 F.3d 147, 148 (2d Cir. 2010) ("On March 27, 2009, the government submitted a letter that presented the evidence of loss, and on May 1, 2009—ninety-eight days after Pickett's sentencing hearing—the District Court adopted the loss figures set forth in the government's letter and entered an amended judgment imposing restitution in the amount of $2,400,800.").